GEORGE MATTHEW ADAMS, PETITIONER, *v.* COMMISSIONER OF REVENUE, RESPONDENT.

Docket No. 27799.   Promulgated November 29, 1929.

*Lawrence H. Hellenberg, C. P. A.*, for the petitioner.
*P. L. Peyton, Esq.*, for the respondent.

OPINION.

SMITH: The only issue before us is whether the amounts of $3,299.21 and $2,515.81 constituted taxable income to the petitioner for the calendar years 1922 and 1923, respectively. In order to arrive at a decision it will be necessary to consider the nature of the premium payments from the standpoint of the petitioner, i. e., whether or not they constituted additional compensation.

Counsel for the petitioner contends that the success of The George Matthew Adams Service, Inc., was and is due to the continued maintenance of friendly relations with the authors and artists having contracts with it to syndicate their productions; that the death of any of its principal employees, and more especially the death of the petitioner, leaving dependents who would not be interested in

the corporation, would tend to disrupt the continuance of such friendly relations; that it was felt that any dependent who might be left in straitened financial circumstances would be less likely to maintain an interest in the corporation than would otherwise be the case; and that it was further felt that in the event the dependents of George Matthew Adams were left with only his interest in the corporation to look to for support they would dispose of such interest in the corporation and thereby remove from the business all traces of the petitioner's personality or influence.

It was also urged on behalf of the petitioner that the premiums in question did not constitute income to him, since they were not received by him and he did not have the free use and disposition thereof, but that, if it were considered that the petitioner had received additional compensation through the action of the corporation, the amount thereof would not be in excess of the cash surrender value of the policies. Our attention was further invited by counsel for the petitioner to a claimed analogy existing between the insurance scheme in question and the general scheme of group insurance.

Counsel for the respondent argues that ordinarily group insurance is taken out without the consent and without the knowledge, in most cases, of the employee, who is not consulted, who does not make the application for the insurance, and who is told about the matter after the thing has been accomplished; that here we have the actual participation by all the employees insured, who were also directors, as well as the beneficiaries; that the employees on whom the policies were taken out made out the applications, had knowledge of what was being done, and gave their consent to what was done; and that the amount of the insurance (the face value of the policy) obviously was set by the individuals, since they were directors of the corporation and the minutes show that the directors passed on such insurance.

It was also urged upon us on behalf of the respondent that group insurance could not be compared to the situation existing in the instant proceeding, since it would appear that the corporation was practically a personal service corporation where the activities of the stockholders, and especially the activities of the petitioner, produced the income and that such a situation is not at all analogous to one where insurance is taken out for thousands of employees who know nothing about it.

The minutes of the meeting of the board of directors of The George Matthew Adams Service, Inc., held January 2, 1922, state:

* * * It was the sense of the meeting that the Company should insure all its principal employees whether financially interested or not to stimulate their efficiency and leave their minds free from all financial cares. * * *

In the light of the foregoing extract from the minutes of the corporation, it seems to us that the evidence presented, as well as arguments of counsel for the petitioner, leads to the conclusion that the policy adopted by the corporation with respect to insuring the lives of its principal employees was adopted primarily for its own benefit.

That any progressive policy of compensation has for its foundation the financial needs of the employee as related to his skill and to the ability of the employer to pay can not be doubted. Increases in compensation are designed not only to reward for past services and compensate for increased efficiency, but also to stimulate future activity. Consequently, we find increases in compensation assuming various forms such as bonuses, pensions, etc., but in all such cases the primary factor considered by the employer is that of his own benefit, be it past, present, or future.

We agree with counsel for the respondent that the situation here is quite different from the one contemplated by that portion of article 33, Regulations 62, relative to premiums paid on group insurance policies, and in the last analysis the premium payments now under consideration constituted either a gift or additional compensation to the petitioner.

On the reasoning and authority of *Noel* v. *Parrott*, 15 Fed. (2d) 669 (certiorari denied, 273 U. S. 754), wherein the court, in considering whether a certain corporate act resulted in the making of a gift or the payment of additional compensation, said:

   * * * Although it is held that the motive accompanying a gift is not material, gifts usually proceed from the generosity of the giver; and, where there is any doubt as to the nature of the transaction, the absence of such motive is a pertinent circumstance for consideration. It is an essential characteristic of a gift, however, that it be a transfer without consideration. * * *

   * * * It needs neither argument nor citation of authority to establish the proposition that the directors were without authority to give away the corporate assets, and that for them to make to several of their members and other persons a gift of a large sum of money from the corporate assets would be neither " wise " nor " proper," and would amount to an illegal misapplication of corporate funds. We must assume that the directors did not intend such a flagrant violation of their trust. * * *

we conclude that the premium payments herein did not constitute a gift to the petitioner. Cf. *Cora B. Beatty, Executrix*, 7 B. T. A. 726; *Willis L. Garey*, 16 B. T. A. 274; and *Chauncey L. Landon*, 16 B. T. A. 907.

As shown by the findings of fact, each person upon whose life an insurance policy was written made application for the policy himself and the policy was issued to the applicant. The applicant was permitted to designate the beneficiaries and in no case was the

corporation designated as a beneficiary. Section 213 of the Revenue Act of 1921, under the provisions of which the petitioner's tax returns for 1922 and 1923 were filed, defines gross income as including "gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid." We think that the premiums paid upon the life insurance policies taken out on the life of the petitioner constituted additional compensation for him for the years 1922 and 1923, within the meaning of the taxing act. Consequently, we are of the opinion that the amounts of $3,299.21 and $2,515.81 constituted additional compensation of the petitioner for the calendar years 1922 and 1923, respectively, and that the respondent committed no error in including such amounts in his taxable income for the respective years.

*Judgment will be entered for the respondent.*