58

DECISION, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3905–64, 5379–64. Filed October 18, 1966.

*Harry Stickney*, for the petitioner.
*Rodney G. Haworth*, for the respondent.

HOYT, *Judge:* Respondent determined deficiencies in income tax and additions to the tax [1] as follows:

| Docket No. | Taxable year | Deficiency | Addition to tax sec. 6651(a) |
|---|---|---|---|
| 3905–64 | 1960<br>1961 | $1, 652. 48<br>31, 946. 74 | $413. 12<br>3, 194. 67 |
| 5379–64 | 1962 | 25, 164. 00 | |

An overassessment in the amount of $2,539 was determined for 1963.

Petitioner has conceded the correctness of certain of respondent's adjustments involving depreciation, repair expense, and charitable contribution deductions. Thus, the issues remaining for decision are (1) whether petitioner must recognize income in the period in which it receives purchase orders, the period in which it bills its customers, or the period in which it prints its publications and fills its orders, and (2) whether petitioner is liable for additions to tax for failure to timely file its 1960 and 1961 returns. The correctness of petitioner's claimed net operating loss deductions (as adjusted by its stipulated concessions referred to above) will depend on our disposition of the central issue.

---

[1] All statutory references herein are to the Internal Revenue Code of 1954.

### FINDINGS OF FACT

The stipulation of facts and exhibits referred to therein are incorporated herein by this reference.

The petitioner is an Ohio corporation, with its principal office in Cincinnati, Ohio. Petitioner keeps its books and files its income tax returns using the accrual method of accounting. Income tax returns for the taxable periods here involved were filed with the district director of internal revenue at Cincinnati, Ohio. The petitioner's 1960 income tax return, normally due to have been filed on March 15, 1961, was not filed until June 15, 1962, an extension having been granted until September 15, 1961. The petitioner's 1961 income tax return, normally due to have been filed on March 15, 1962, was not filed until August 6, 1962, an extension having been granted until June 15, 1962.

The petitioner, Decision, Inc., is in the publishing, direct-mail advertising, and technical recruiting business. The bulk of its gross income is derived from the sale of advertising space in various specialized publications. Among other things, petitioner publishes two annual publications entitled, respectively, the "Decision/Job Directory"[2] (hereinafter referred to as Job Directory), and the "Business Register." The Job Directory is basically a list of approximately 1,500 organizations selected by petitioner as offering exceptional employment opportunities for technically trained individuals. It sets forth the name, address, type of business, and principal officers of each of the organizations listed and also contains job-recruitment advertising from many of these organizations. The Business Register is a directory of business organizations in the Cincinnati area, listing the officers and key employees. It also contains advertising from many of the businesses listed. Although there are some incidental sales of the Job Directory and Business Register, generally both publications are distributed free of charge to individuals selected by petitioner. Both are published in the early part (approximately February) of each calendar year.

During the years here in question, advertisers who purchased space in the Job Directory were entitled to immediate use, upon execution of their advertising contract, of petitioner's EJD/Résumé System and DMR (Direct Mail Recruitment) advertising. The EJD/Résumé System was a service pursuant to which petitioner would regularly supply the advertiser with résumés of technical personnel seeking new positions. An advertiser could request advertising space in the Job Directory without the résumé service, and in such a case there would be a $100 reduction in the price of the advertising space.

---

[2] Prior to 1963 this publication was entitled "EJD/Job Directory."

During the years in issue, orders for the purchase of advertising space in the Job Directory and the Business Register were solicited by petitioner several months in advance of the proposed publication dates. All orders were stated in the order forms to be noncancelable. Discounts were allowed for the early placement of orders. A "closing date" for the acceptance of advertising orders was set several months prior to the publication date. All orders not previously paid for were billed by petitioner on the closing date, terms net 10 days. The closing date (and billing date) for each of the 1960, 1961, 1962, and 1963 editions was in the latter part (approximately November) of the calendar year preceding the year of publication, and, thus, petitioner billed all of its advertising revenue from these editions in the year prior to their publication.

In connection with its 1964 editions of the Business Register and Job Directory, petitioner instituted a change in its advertising-contract terms and billing procedures. The advertising order form for the 1964 Business Register provided, in part, as follows: "Closing date is November 15th [1963]. Invoice is rendered January, 1964. Terms are net 30 days. Publication date is February, 1964." The advertising order form for the 1964 Job Directory provided for a publication date of February 1964, and terms of net 10 days, invoiced January 1, 1964. Thus, all of petitioner's advertising revenue for the 1964 editions was billed and received in 1964. Petitioner did not request the Commissioner of Internal Revenue for permission to change an accounting method in connection with the above-described changes in its advertising contracts and billing practices.

Some of petitioner's advertisers in the 1960 through 1963 editions of the Job Directory and Business Register paid for their advertisements at the time they entered their orders. Others did not pay until after they were billed. For these editions petitioner billed its unpaid contracts on the "closing date" in October or November of the year prior to the year of publication, and recorded all amounts billed as accounts receivable. All cash receipts and accounts receivable were credited to a deferred income account and not reported as taxable income until the year of publication.

On December 31, 1959, petitioner's deferred-income account had a balance of $600, which amount was reported as taxable income in the year 1960. On December 31, 1960, petitioner's deferred-income account had a balance of $68,856.65, which was reported as taxable income in 1961. The respondent determined that the $600 had been improperly reported in 1960; that the $68,856.65 constituted additional taxable income in 1960, so that a net adjustment of $68,256.65 resulted.

On December 31, 1961, petitioner's deferred income account (reflected as "Advance Billings for Advertising in Annual Directories to

be Published in 1962" in its 1961 tax return) had a balance of $85,591.77. Respondent has determined that the entire $85,591.77 constitutes taxable income in 1961 rather than in 1962 when it was so reported. Giving effect to respondent's determination that $68,856.65 constituted taxable income in 1960 rather than 1961 when reported, a net adjustment of $16,735.12 (erroneously shown to have been $16,735.22 in the notice of deficiency for 1961) was computed in 1961.

On December 31, 1962, petitioner's deferred income account (reflected as "Advance Billings for Advertising in Annual Directories" in its 1962 tax return) had a balance of $127,560, which amount was reported as taxable income in 1963. Respondent has determined that the entire amount [3] constitutes taxable income in 1962. Giving effect to respondent's determination that $85,592 constituted taxable income in 1961 rather than 1962 when reported, a net adjustment of $41,968 was computed in 1962.

As a result of the new contract terms and revised billing procedures instituted in connection with the 1964 editions of the Job Directory and Business Register there were no billings for these editions prior to January 1, 1964, even though orders were solicited throughout most of 1963. Hence, petitioner reflected no deferred income as of December 31, 1963, in its income tax return for that year, and all advertising revenue from the 1964 editions was reflected in taxable income in 1964. Respondent has determined that the amount of $115,162.50 received in 1964 in payment for noncancelable advertising orders originally placed with petitioner in 1963 constitutes taxable income in 1963. Giving effect to respondent's determination that $127,560 constituted taxable income in 1962 rather than 1963 when reported, a net downward adjustment of $12,397.50 was computed in 1963 taxable income. This adjustment (net of a disallowed charitable contribution not here contested by petitioner) resulted in a net operating loss shown on the statutory notice for 1963. Although the deficiencies as determined by the respondent for the years 1960, 1961, and 1962 do not give effect to any net operating loss carryback from 1963, respondent has conceded on brief that whatever net operating loss may result for 1963 from our holding on the principal issues herein should be carried back and given effect, to the extent permitted by the Code, in the determination of the correct taxable income in the other years before us.[4]

Petitioner's cash receipts from the contracts heretofore mentioned were not segregated but used in petitioner's business.

---

[3] This amount is shown as $127,650 in the notice of deficiency appended to the petition in docket No. 5379–64. This figure in the notice of deficiency is apparently an erroneous transposition of numbers in view of the stipulation, which states that the adjustment for 1962 was $127,560, and respondent's Amendment to Answers to Petitions, as Amended (par. 10), which states that the statutory notice was erroneous.

[4] See *Yellow Cab Co.* v. *Commissioner,* —— F. 2d —— (C.A. 7, 1965), reversing 43 T.C. 125 (1964).

Petitioner deferred certain advertising income billed and received in 1959, 1960, 1961, and 1962 to the respective succeeding years. Respondent has disallowed this deferral and reallocated the deferred income back into the year of billing. Petitioner challenges this reallocation and contends alternatively that if respondent's theory is to be sustained for the years 1960, 1961, and 1962, then application of the same theory to the year 1963 produces a large net operating loss for that year which may be carried back to wipe out all of the 1960 and 1961 and a portion of the 1962 deficiencies.

On the first issue, whether petitioner may properly defer 1960, 1961, and 1962 receipts to the respective succeeding years, we hold for respondent. Despite petitioner's attempts to distinguish its situation, there seems to be no escape from the no-deferral rule of *Schlude* v. *Commissioner*, 372 U.S. 128 (1963); and *American Automobile Assn.* v. *United States*, 367 U.S. 687 (1961), rehearing denied 368 U.S. 870 (1961). The instant case is controlled by *William O. McMahon, Inc.*, 45 T.C. 221 (1965), a recent decision of this Court involving a very similar factual situation. There we held that a publisher of an annual automotive price information manual could not defer, to the year of publication, receipts and accruals from sales of the manual in the fiscal year prior to publication. For the reasons expressed therein and in the two above-cited Supreme Court cases, which reasons need not be repeated here, we hold that respondent's reallocation of deferred income from advertisers out of the year to which deferred and back into the gross income of the year in which received or accrued must be sustained.

Such a reallocation would result in tax deficiencies for the years 1960, 1961, and 1962 were it not for its bizarre effect on the year 1963. Commencing with the 1964 editions of the Job Directory and Business Register, petitioner changed its method of contracting with its advertisers and billing so that no billings were made and no payments were due or received until the year of publication. As a result of this change no sales were billed and no amounts received in the year 1963, even though orders were taken throughout most of that year. Petitioner had originally reported gross income in 1963 by virtue of its deferral into 1963 of 1962 billings on its 1963 editions. But respondent has disallowed this deferral and we have sustained the disallowance, and, thus, petitioner's reported 1963 gross income must be treated as 1962 gross income. This, of course, produces a gap and leaves 1963 with no gross income from the Job Directory and Business Register. With no gross income a substantial net operating loss results, which loss petitioner now claims should be carried back

against 1960, 1961, and 1962 net income as determined by respondent.

Respondent attempts to duck this unexpected ricochet of his own sniping at petitioner's accounting method by arguing that the income related to advertising in the 1964 editions *accrued* in 1963 when orders were received, even though petitioner did not bill and did not receive any payments until 1964. We cannot agree, and it appears that respondent is indeed (at least partially) hoist with his own proverbial petard.

Section 1.451–1(a) of the Income Tax Regulations provides in pertinent part:

Under an accrual method of accounting, income is includible in gross income when all of the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy. * * *

In the case of the advertising contracts entered into by petitioner in 1963, no income was received or accrued until 1964. All of the events which fixed the right to receive such income had not occurred prior to 1964. This is because the advertising order forms which set the terms for the contractual relationship established in 1963 between petitioner and its advertisers provided that the contract was not to be billed and payment was not due until 1964. Thus, at least one event fixing petitioner's right to the advertising income, the arrival of the January 1, 1964, billing date, did not occur at the time the order was received or at any time in 1963. The income therefrom therefore did not *accrue* in 1963. For tax purposes,[5] income does not accrue, even to an accrual basis taxpayer, until such time as it becomes due and payable to the taxpayer. Cf. sec. 1.451–1(a), Income Tax Regs.; *E. Morris Cox*, 43 T.C. 448, 456–457 (1965), acq. 1965–2 C.B. 4. See *Schlude* v. *Commissioner, supra* at 133, fn. 6 and related text 137.

Respondent contends that income accrues upon performance by the taxpayer even though by contract the payment for this performance may be postponed. He then goes on to point out that even though the 1964 Job Directory was not published until after the January 1, 1964, billing date, nonetheless, the advertisers began receiving the résumé service as soon as they placed their advertising orders in 1963. Thus, claims respondent, to the extent that petitioner provided the résumé service during 1963, the income attributable thereto accrued in 1963 even though the customers were not billed until 1964.

We cannot accept this argument. See *Charles F. Dally*, 20 T.C. 894, 899 (1953), affd. 227 F. 2d 724 (C.A. 9, 1955), certiorari denied 351 U.S. 908. Respondent has referred us to no cases holding that income accrues upon part performance of a contract prior to an agreed billing or payment date. *E. Morris Cox, supra,* does not so hold.

---

[5] This is not necessarily the case in nontax, financial accounting.

Respondent also argues that the claimed net operating loss for 1963 was purposely engineered by petitioner's changing its billing date for the 1964 editions in a manipulative effort to wipe out the deficiencies which would result from respondent's adjustments for 1960, 1961, and 1962. Petitioner admits that it changed its contractual arrangements with advertisers and its billing date at least in part because of respondent's disapproval of its method of deferring income, and allegedly at the direction of respondent's agents. Petitioner points out, and we agree, that its new policy of billing in the year of publication achieves a better matching of costs and revenues and avoids the very tax problems which gave rise to this litigation. This, however, is not a case of the manipulation of billing procedures so as to prevent income from accruing that otherwise would have been reportable and taxable in 1963. See *E. Morris Cox, supra* at 457, fn. 3.

Respondent asserts repeatedly that this change in billing policy and practice amounted to a change of accounting method and could not have been made without his approval pursuant to section 446(e), but he cites no authority to support his contention. We cannot agree that this change in business policy can be regarded as a change in method of accounting.

Although the change had consequences in the annual determination of income, such consequences were not produced by the accounting system. In essence this kind of business policy change was no different from a decision to lower prices or halt production for a year. To sustain this argument of respondent would have the effect of denying a business the right to determine the terms of sale of its product without clearing the matter with the Commissioner of Internal Revenue, clearly an odious propagation of the tentacles of the Government anemone. Petitioner merely agreed with its customers not to bill on 1963 orders until 1964 for advertising in its 1964 publications.

We hold that petitioner realized no taxable income in 1963 from the sale of advertising in the 1964 editions of the Job Directory and Business Register, receipts from which were neither paid nor accrued in 1963. The net operating loss resulting from this holding may be determined under Rule 50, giving effect to respondent's disallowance of a charitable contribution deduction in the notice of overassessment for 1963.

Petitioner has made no argument nor has it presented any evidence with respect to its liability for additions to tax for 1960 and 1961. To the extent that the Rule 50 computation produces a deficiency for 1960 or 1961 before net operating loss carryback deductions from 1963, the additions to tax under section 6651(a) at the rates imposed by respondent, may also be redetermined under Rule 50.

*Decisions will be entered under Rule 50.*