PAUL L. FROST AND LOU FROST, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6054-66. Filed April 17, 1969.

*Edward R. Smith* and *William Norton Baker*, for the petitioners.
*D. Ronald Morello*, for the respondent.

OPINION

STERRETT, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1962, 1963, and 1964 in the amounts of $1,875.29, $1,573.56, and $1,518.87, respectively. The proceeding was submitted under Rule 30 of the Court's Rules of Practice.

The error assigned by petitioners for 1962 is as follows: "(a) The erroneous and illegal finding that petitioners realized taxable income from the payment by his employer of life insurance premiums in the amount of $5,365.58 during 1962."

Identical assignments, except for the year therein stated, were made for 1963 and 1964, respectively.

All of the facts were stipulated and are found accordingly.

Petitioners are husband and wife and resided at Artesia, N. Mex., on the date when the petition in this proceeding was filed. They filed joint income tax returns for the years 1962, 1963, and 1964 with the district director of internal revenue at Albuquerque, N. Mex.

The basis of the deficiencies proposed by respondent was the determination that petitioners realized income from the payment by petitioner-husband's employer of life insurance premiums in the amounts of $5,365.58 in each of the years involved.

Petitioners kept their records and prepared their returns on the cash basis of accounting.

During the years involved petitioner Paul L. Frost (hereinafter sometimes referred to as petitioner) was employed as manager by Central Valley Electric Cooperative, Inc. (hereinafter sometimes referred to as Co-op). Petitioner began his employment with Co-op in 1949.

On April 21, 1955, Co-op purchased an insurance policy on the life of petitioner, who was then 48 years of age, with death benefits of $14,000 and retirement benefits of $140 per month, being policy No. 129114, with Republic National Life Insurance Co. of Dallas, Tex. The annual premium on this policy was $1,255.10. The policy provides that Co-op is the beneficiary. Attached to the policy is an "Absolute Ownership Endorsement" which provides in part as follows:

Anything contained in this policy to the contrary notwithstanding, the control and all legal incidents of said policy shall be vested in * * * [Co-op] ITS SUCCESSORS OR ASSIGNS instead of the insured therein named; and the said * * * [Co-op] ITS SUCCESSORS OR ASSIGNS shall have each and every right and receive each and

every benefit given and reserved in said policy to the insured, and without the consent of the insured or any designated beneficiary may exercise any such right and receive any such benefit and may agree with the Company to change or amend said policy.

Regarding the benefits, policy No. 129114 provided that the insurance company will pay an income of $140 per month to the insured, petitioner, if living on the retirement date, April 21, 1972, or a death benefit of $14,000 "or the Cash Value hereof, if greater, at the end of the Policy year of death to the Beneficiary * * * [Co-op]."

Concurrently with the issuance of policy No. 129114, namely, on April 21, 1955, an agreement was entered into between Co-op, as first party, and petitioner, as second party, covering the handling, disposition, and respective rights of the parties in said policy. This agreement provided, in part, as follows:

WHEREAS, it is the desire of the PARTY OF THE FIRST PART to protect their manager, who is the key person in the employment of the Cooperative, and

WHEREAS, the PARTY OF THE FIRST PART desires to provide a retirement plan of benefits for the PARTY OF THE SECOND PART who has been with the Cooperative more than five years, subject to the following terms and conditions.

THAT the PARTY OF THE FIRST PART will purchase an insurance policy on the life of the PARTY OF THE SECOND PART for their protection, in the approximate amount of $14,000.00 and to pay the first year's premium together with all future discounted premiums in a lump sum. The PARTY OF THE FIRST PART shall be the beneficiary under the policy and the PARTY OF THE SECOND PART will neither directly or indirectly have any control over the policy until such time as one of the following conditions exist, to-wit:

1. The PARTY OF THE SECOND PART departs this life before reaching the age of 65 years, and in this event, the face value of the policy shall be paid to the estate of the PARTY OF THE SECOND PART, and the balance in unearned premiums to be refunded to the PARTY OF THE FIRST PART.

2. That in the event the PARTY OF THE SECOND PART reaches the age of 65 years and at this age is in the employment of the PARTY OF THE FIRST PART the policy is to be transferred and delivered over to the PARTY OF THE SECOND PART, who shall receive all benefits and proceeds from said policy.

3. That in the event the PARTY OF THE SECOND PART becomes totally disabled, then in this event, the PARTY OF THE SECOND PART shall receive full benefits of said policy.

4. In the event the PARTY OF THE SECOND PART withdraws or terminates his services, of his own free will and accord, with the PARTY OF THE FIRST PART, then the PARTY OF THE SECOND PART shall receive the cash value of the policy up to the date of the termination and the unearned premiums are to be repaid to the PARTY OF THE FIRST PART.

5. In the event the services of the PARTY OF THE SECOND PART are terminated at the request of the PARTY OF THE FIRST PART, then in this event the PARTY OF THE SECOND PART shall receive the policy with the discounted premiums, which have been paid as compensation for services performed prior to termination.

THIS AGREEMENT is personal between the parties hereto and shall not be sold, assigned, transferred or exchanged without the written consent of the parties hereto.

On June 8, 1958, Co-op purchased an insurance policy on the life of petitioner, who was then 51 years of age, with death benefits of $10,000 and retirement benefits of $100 per month, being policy No. 13473, with New Mexico Life Insurance Co. of Albuquerque, N. Mex. The annual premium on this policy was $1,075.50. The policy provides that the beneficiary is "Ruth B. Frost, wife, if living, otherwise to: estate." Stamped across this provision were the words "See Endorsement." The endorsement is as follows:

CHANGE OF BENEFICIARY

DATE ENDORSED—JUNE 7, 1962

ESTATE OF THE INSURED (Paul L. Frost)

(Signed)   CARMEN NICHOLS
*Registrar*

About 9 days after the issuance of policy No. 13473, namely, on June 17, 1958, an agreement was entered into between Co-op, as first party and petitioner, as second party, covering the handling, disposition, and the respective rights of the parties in the policy. Except for names and amounts the agreement is substantially the same as the previously mentioned agreement dated April 21, 1955. The portions of the 1958 agreement which vary from the 1955 agreement are as follows:

THAT the PARTY OF THE FIRST PART will purchase an insurance and retirement policy with the New Mexico Life Insurance Company (Policy #13473), on the life of the PARTY OF THE SECOND PART for their protection, in the amount of $10,000.00 and to pay the first year's premium, together with all future discounted premiums in a lump sum. * * *

2. That in the event the PARTY OF THE SECOND PART reaches the age of 65 years and at this age is in the employment of the PARTY OF THE FIRST PART, the PARTY OF THE SECOND PART shall receive the retirement payments as stated in the policy from said policy and if the PARTY OF THE SECOND PART does not live to receive the full benefits of the policy, the payments to be continued to his wife, if living with him, and then to his daughter.

3. That in the event the PARTY OF THE SECOND PART becomes totally disabled, then in this event, the PARTY OF THE SECOND PART shall receive full benefits of said policy at age 65 in the same manner as outlined in paragraph 2.

5. In the event the services of the PARTY OF THE SECOND PART are terminated at the request of the PARTY OF THE FIRST PART, then in this event the PARTY OF THE SECOND PART shall receive the full benefits of the policy paid in full at age 65, and the PARTY OF THE SECOND PART shall receive the payments in the same manner as outlined in paragraph 2.

On January 8, 1962, Co-op purchased an insurance policy on the life of petitioner, who was then 55 years of age, with death benefits of $18,000 and retirement benefits of $180 per month, being policy

No. 245855, with Protective Life Insurance Co. of Birmingham, Ala. The annual premium on this policy was $3,034.98. The policy provides that Co-op and/or the estate of petitioner is the beneficiary. A beneficiary designation rider attached to the policy provides, in part, as follows:

Anything contained in this policy to the contrary notwithstanding, if the policy shall become payable by reason of the death of the insured, the proceeds of the policy shall, upon receipt of due proof of such death, be paid in the manner hereinafter provided:

That part of the proceeds which is equal to the net cash surrender value of the policy at the time of the death of the insured shall be paid forthwith in one sum to the executors or administrators of the insured. The remainder of such proceeds, if any, shall be paid forthwith in one sum to the beneficiary as named in the policy, Central Valley Electric Cooperative, Inc., its successors or assigns.

    \*        \*        \*        \*        \*        \*        \*

Central Valley Electric Cooperative, Inc., shall be the beneficiary under the policy (except as to the right of the administrators or executors of the insured to receive an amount equal to the net cash surrender value of the policy, as stated above). The right is reserved unto the owner without the consent of any beneficiary, to change the beneficiary or beneficiaries, to revoke, alter or amend the terms hereof, to elect other methods for the payment of the proceeds of the policy, to obtain loans on the security of or surrender the policy for its cash value, to receive all dividends and to exercise every other right and receive every other benefit conferred upon the owner or the insured in said policy.

About 44 days after the issuance of policy No. 245855, namely, on February 21, 1962, an agreement was entered into between Co-op, as first party, and petitioner, as second party, covering the handling, disposition, and the respective rights of the parties in the policy. This agreement contains the following provisions which vary from the 1955 agreement:

THAT the PARTY OF THE FIRST PART will purchase an insurance and retirement policy with the Protective Life Insurance Company, on the life of the PARTY OF THE SECOND PART for their protection, in the amount of $18,000.00 with retirement of approximately $200.00 per month at age 65, and to pay the first year's premium, together with all future discounted premiums in a lump sum. \* \* \*

1. The PARTY OF THE SECOND PART departs this life before reaching the age of 65 years; and in this event, the cash value of the policy shall be paid to the estate of the PARTY OF THE SECOND PART and the balance of the face value (if any) of the policy plus the unearned premiums to be paid to the PARTY OF THE FIRST PART.

2. That in the event the PARTY OF THE SECOND PART reaches the age of 65 years and at this age is in the employment of the PARTY OF THE FIRST PART, THE PARTY OF THE SECOND PART shall receive the retirement payments as stated in the policy from said policy and if the PARTY OF THE SECOND PART does not live to receive the full benefits of the policy, the payments to be continued to his wife, if living with him at the time of his death, and then to his daughter.

3. That in the event the PARTY OF THE SECOND PART becomes totally disabled, then in this event, the PARTY OF THE SECOND PART shall receive full benefits of said policy at age 65 in the same manner as outlined in paragraph 2.

4. In the event the PARTY OF THE SECOND PART withdraws or terminates his services, of his own free will and accord, with the PARTY OF THE FIRST PART, then the PARTY OF THE SECOND PART shall have the option to receive the cash value of the policy up to the date of the termination or assume the yearly payment of premiums for the remaining term of the policy with the contract of the policy to be transferred to the PARTY OF THE SECOND PART, and the unearned premiums which had been paid by the PARTY OF THE FIRST PART are to be repaid to the PARTY OF THE FIRST PART.

5. In the event the services of the PARTY OF THE SECOND PART are terminated as Manager at the request of the PARTY OF THE FIRST PART, then in this event, the PARTY OF THE SECOND PART shall receive the full benefits of the policy paid in full at age 65, and the PARTY OF THE SECOND PART shall receive the payments in the same manner as outlined in paragraph 2.

On May 28, 1962, an "Assignment and Trust Agreement" was executed by Co-op and petitioner which designated the Trust Department of the First National Bank of Albuquerque, N. Mex., as the trustee of the three insurance policies. This assignment and trust agreement specifically makes the three agreements of April 21, 1955, June 17, 1958, and February 21, 1962, a part thereof. The said assignment and trust agreement also provided:

It is the desire and request of the Central Valley Electric Cooperative, Inc., that the Trust Department of the First National Bank of Albuquerque, New Mexico, carry out the terms and conditions of the policies described herein above and the agreements in connection therewith for the Central Valley Electric Cooperative, Inc., as the owner of said policies, and further, with the understanding that this assignment and trust agreement is not to be revoked or changed without the written consent of the Central Valley Electric Cooperative, Inc., and Paul L. Frost, the insured.

At the time each of the three insurance policies were purchased by Co-op, the total discounted premiums were prepaid. The funds on deposit were credited with interest and were charged for the yearly premiums due on the policies. The deposited funds were withdrawable by Co-op.

Petitioners did not report as income in their returns for 1962, 1963, or 1964 any part of the insurance premiums paid by Co-op to the three insurance companies. The annual premium on each of the policies for each of the taxable years in question was as follows:

| Policy No. | Annual premium |
|---|---|
| 129114 | $1, 255. 10 |
| 13473 | 1, 075. 50 |
| 245855 | 3, 034. 98 |
| | 5, 365.58 |

For each of the taxable years in question the respondent added the amount of $5,365.58 to the income reported by petitioners for those years as representing "Insurance premiums paid by your employer." He explained this addition for each of the 3 years 1962, 1963, and 1964, as follows: "It is determined that you realized income from the payment by your employer of life insurance premiums in the amount of $5,365.58 which you failed to report on your income tax return."

Thus, the question presented for our decision is whether premium payments made by petitioner's employer in each of the taxable years involved herein are includable as additional compensation in petitioner's gross income, where, pursuant to agreements between petitioner and his employer, petitioner or his heirs have rights to receive either the cash surrender value, the retirement benefits accruing under said policies, or the face value upon the happening of any one of several future events.

Respondent's position brings into issue section 61 (a)(1), I.R.C. 1954, which provides that gross income encompasses "all income from whatever source derived, including * * * Compensation for services * * *." It is axiomatic that a liberal construction is to be given this broad definition of gross income. *Commissioner* v. *Lo Bue*, 351 U.S. 243 (1956); *Commissioner* v. *Glenshaw Glass Co.*, 348 U.S. 426 (1955). As the Supreme Court said in *Commissioner* v. *Smith*, 324 U.S. 177, 181 (1945), of the comparable definition of gross income contained in section 22 (a) of the 1939 Code, "it is broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever the form or mode by which it is effected."

Where a present economic benefit is conferred by an employer upon his employee, in addition to the employee's agreed salary, a presumption arises that such benefit constitutes additional compensation which is taxable to the employee. *Commissioner* v. *Bonwit*, 87 F.2d 764 (C.A. 2, 1937), reversing and remanding 33 B.T.A. 507 (1935), certiorari denied 302 U.S. 694 (1937); *Yuengling* v. *Commissioner*, 69 F.2d 971 (C.A. 3, 1934), affirming 27 B.T.A. 782 (1933); *Lee* v. *United States*, 219 F.Supp. 225 (W.D. S.C. 1963). This is particularly true where the facts and circumstances of the case fail to reveal the type of detached and disinterested generosity on the part of the employer which might evidence a gift to the employee. *Commissioner* v. *Lo Bue*, *supra* at 246.

We are therefore brought to a consideration of whether, under the facts before us, it can be said that Co-op conferred a present economic benefit upon the petitioner. Petitioner advances the position that he received no present economic benefit from the three policies since, pur-

suant to the provisions of such policies and the related agreements, control over the policies was vested in Co-op until fruition of one of the designated conditions of payment to petitioner or his heirs; and thus, he is not taxable on the premiums since he did not have such present benefits as the right to change the beneficiary, the right to assign the policies, or the right to borrow against or exchange the policies for their respective cash surrender values. Respondent replies that the petitioner did receive a valuable present economic benefit, i.e., insurance protection.

We agree with respondent that the petitioner did receive each year in question a present economic benefit from the payment of premiums. The most obvious benefit was the annual increase in the cash surrender value of the policies. Pursuant to the agreements between petitioner and his employer this was the minimum benefit which accrued to him even in the circumstance of his voluntarily terminating his employment. To this extent his interest in the rights under the policies was vested and nonforfeitable.[1]

In addition petitioner received each year in question basic insurance protection. During the course of these years his family was the beneficiary of a measure of protection against his sudden disability or demise. This protection was of current economic value to him. There is no evidence that any other employee was granted similar protection. Thus, we find that Co-op did confer a present economic benefit on petitioner.

Such a finding creates the presumption that payment for economic benefit conferred qualifies as compensation. Further we are convinced that this case falls within the ambit of the cases which hold that where the employer pays the premiums on permanent life insurance policies covering the life of one of its employees, and where the benefits under such policies are payable to the employee or his heirs, the full amount of such premiums are includable as additional compensation in the gross income of the employee. *Commissioner* v. *Bonwit, supra; Canaday* v. *Guitteau,* 86 F.2d 303 (C.A. 6, 1936) ; *Yuengling* v. *Commissioner, supra; Lee* v. *United States, supra; N. Loring Danforth,* 18 B.T.A. 1221 (1930) ; and *George Matthew Adams,* 18 B.T.A. 381 (1929). Admittedly the petitioner did not have as full and complete rights under the policies at issue here as the taxpayers in the foregoing

---

[1] While Co-op and petitioner could jointly revoke the trust and then perhaps acting in concert alter his rights under the insurance policies and the related agreements, it must be assumed that petitioner would not sign away his minimum rights to the cash surrender values without receiving something of at least equal value. Thus, his right to the cash surrender value may be deemed vested and nonforfeitable for purposes of determining the income status of the premium payments.

cases appeared to have had under the policies there involved. Nevertheless, as stated, the rights that were conferred upon him had a real economic value to him and the cost for furnishing such value can only constitute income to him.[2]

Petitioner in his original brief contends that, as a cash basis taxpayer, the premiums on the three policies for the 3 years in question totaling $5,365.58 were not actually or constructively received by him in the taxable years, and should not, therefore, be included in his income, citing section 451(a), I.R.C. 1954; Rev. Rul. 68–99, 1968–1 C.B. 193; *Cowden* v. *Commissioner*, 289 F.2d 20 (C.A. 5, 1961), reversing and remanding 32 T.C. 853; *Drysdale* v. *Commissioner*, 277 F.2d 413 (C.A. 6, 1960), reversing and remanding 32 T.C. 378; and *E. T. Sproull*, 16 T.C. 244, affirmed per curiam 194 F.2d 541 (C.A. 6, 1952).

Petitioner's reliance on section 451(a), *supra*, is misplaced. That section is primarily concerned with the taxable year of inclusion. The question of whether premium payments made by an employer on permanent life insurance policies benefitting the employee or his estate constitute gross income to the employee within the purview of section 61(a) seems far beyond its reach. In view of the fact that we have already determined that the premium payments gave rise to a present economic benefit to petitioner which is swept into gross income by virtue of the provisions of section 61(a), the question of proper years for inclusion has presented no difficulty.[3]

Petitioner especially relies on that paragraph of Rev. Rul. 68–99, *supra*, which says:

An employee is not in receipt of income as a result of his employer's purchase of an insurance contract where the employee does not receive a present economic benefit therefrom.

As just noted, we have already made a finding that petitioner did receive a present economic benefit under the policies at issue.

The three cases relied upon by petitioner are not in point and are not analogous to the facts and issue involved herein. None of these cases involved the payment of premiums by an employer on a life insurance policy on the life of an employee.

Petitioner asserts for the first time in his reply brief that even if it be assumed that the premium payments are taxable to him, the tax

---

[2] The parties made no issue of the precise monetary value of any economic benefit that this Court might find had accrued to petitioner and the stipulated facts do not deal with this question. Accordingly, we accept the respondent's findings as to that value.

[3] Neither party has cited sec. 403(c) in support of his position and hence its applicability is not discussed. It might be noted that, as is obvious from the findings herein, were that section to be held applicable the result would be the same as found above.

should properly have been asserted against the total discounted premiums in the respective years such amounts were "prepaid" (i.e., deposited) with the various insurance companies, rather than against each annual prorata premium amount as it became due and payable. This argument is contrary to paragraph 14 [4] of the stipulation of facts filed in this case wherein the parties agreed that at the time of purchase of each of these policies, the total discounted premiums were deposited, credited with interest, charged for the yearly premiums due, and that the deposited unused funds were withdrawable by Co-op. We dealt with this situation in *Paul A. Draper*, 6 T.C. 209 (1946), wherein we held that where premiums paid in advance are withdrawable at the request of the employer before they become due, such payments are not income to the employee until irrevocably paid to the insurance company.

Petitioner contends that the *Draper* case has in effect been overruled by *Schlude v. Commissioner*, 372 U.S. 128 (1963); *American Automobile Ass'n. v. United States*, 367 U.S. 687 (1961); *Artnell Co.*, 48 T.C. 411 (1967), reversed and remanded 400 F.2d 981 (C.A. 7, 1968); *Hagen Advertising Displays, Inc.*, 47 T.C. 139 (1966), recently affirmed by (C.A. 6, 1969) 407 F.2d 1105; *Decision, Inc.*, 47 T.C. 58 (1966). We regard these prepaid income cases as being inapposite to the situation presented in the *Draper* case and in the instant case. Petitioner here did not receive in the year the premiums were prepaid the benefit of any more than the current year premium. The prepaid premiums for subsequent years could be withdrawn by Co-op at any time prior to the time they were in fact used for the current year premium. Also the three contracts dated April 21, 1955, June 17, 1958, and February 21, 1962, specifically provided that upon the happening of certain events the "unearned premiums" were to be returned to Co-op.

In view of the foregoing, we conclude that respondent correctly determined that petitioner realized income from the payment by his employer of insurance premiums in the amount of $5,365.58 for each of the taxable years 1962, 1963, and 1964.

*Decision will be entered for the respondent.*

---

[4] 14. At the time each of the three insurance policies were purchased by the Co-op, the total discounted premiums were prepaid. The funds on deposit were credited with interest and were charged for the yearly premiums due on the policies. The deposited funds were withdrawable by the Co-op. A rider is attached to the policies issued by the Republic National Life Insurance Co. policy (Exh. 4–D) and the Protective Life Insurance Co. policy (Exh. 8–H) setting forth the manner in which the deposited funds are to be handled. The policy issued by the New Mexico Life Insurance Co. does not contain such a rider, but the latter company handles the deposited funds in a similar manner.