MICHAELIS NURSERY, INC., A CALIFORNIA CORPORATION, RONALD J. MICHAELIS, TAX MATTERS PERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michaelis Nursery v. Commissioner
Docket No. 21842-93
United States Tax Court
T.C. Memo 1995-143; 1995 Tax Ct. Memo LEXIS 136; 69 T.C.M. (CCH) 2300; March 30, 1995, Filed *136 Decision will be entered for Respondent. For petitioner: Jeffrey P. Kane and Steven M. McClean. For respondent: William D. Reese. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent sent a notice of final S corporation administrative adjustment (FSAA) to Ronald J. Michaelis (petitioner) on August 9, 1993, for 1990 and 1991. The sole issue for decision is whether amounts received by Michaelis Nursery, Inc. (the corporation) from its customers in connection with the sale of trees should have been recognized as income in the year the payments were received or in subsequent years, when the trees were delivered. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. The corporation is a California corporation, organized in 1989. The corporation is a qualified S corporation within the meaning of section 1361. At the time the petition was filed, the principal place of business of the *137 corporation was located in Porterville, California. At all relevant times, the corporation used the cash method of accounting. Petitioner is both the tax matters partner and owner of the corporation. Petitioner is also connected with another nursery, separate from the corporation, called "Michaelis Citrus Nursery, Inc." The corporation is engaged in the business of raising and selling citrus nursery stock. Some buyers from the corporation made purchases of citrus nursery stock during the calendar year 1990 for delivery during a later taxable year. Ordinarily, customers who made purchases of 500 trees or more during 1990 for delivery in a later year used a standard form contract, provided by the corporation, entitled "Nursery Sales Agreement" (the agreement). Customers who used the agreement received a discount from the corporation of $ 0.25 per tree, relative to other sales. When a buyer executed an agreement during the calendar year 1990, such buyer would, pursuant to the terms of the agreement, make an advance payment to the corporation at the rate of $ 2.00 per tree. The corporation did not recognize the advance payments from its customers as income until the trees were *138 transferred to these buyers. On the front side of the agreement under the heading "Specific Terms", the agreement provided "    Deposit Required. Balance of purchase price shall be due and payable once trees are received." The amount of the deposit was inserted when the agreement was executed. On the reverse side of the agreement under the heading "General Terms", the following reference to the deposit was made: 3. Seller [The corporation] will not be responsible for any delays in delivery or other nonperformance arising out of strikes, riots, war, invasion, fire, explosion, accident, frost, or other unusual adverse weather, acts of God, or any other matters which are beyond Seller's reasonable control. If Seller is unable to perform by reason of the events specified in this paragraph, all deposits previously made by Buyer will be refunded to Buyer, without interest. The refund of all deposits to Buyer shall constitute a full settlement of any liability of Seller to Buyer under the terms of this agreement.
This provision contained the only reference in the agreement to the refund of a buyer's deposit. The second provision of the "General Terms" section provided *139 that the "Seller [the corporation] will deliver healthy trees of good quality. No other express or implied warranties are made." When a customer requested the refund of a deposit, petitioner decided whether to honor the request. Petitioner never refused to return a deposit requested by a customer. He refunded the deposits, in order to maintain goodwill with the growers in the community, for customers who presented good reasons for canceling an order, such as death or insolvency, and for customers who simply changed their minds about an order. In some instances, a grower would ask that a check be sent for the refunded amount. In other instances, a grower would ask that the refund be applied to the grower's purchase of replacement trees (replants) or to another purchase from the corporation or to amounts owed to Michaelis Citrus Nursery, Inc.
During 1990, buyers made advance payments of $ 282,960 to the corporation in conjunction with the execution of the agreements. The corporation did not recognize any of this amount as income in 1990. Respondent sent to petitioner an FSAA, treating the advance payments received by the corporation in 1990 as additional income to the corporation *140 in 1990. Respondent also decreased the ordinary income of the corporation for 1991 by $ 28,934, representing the amount of deposits returned by the corporation to its buyers in 1991. OPINION The dispute between the parties concerns the appropriate characterization of the payments that the corporation received from its customers in 1990 for the purchase and delivery of citrus trees in a subsequent year. Respondent contends that the payments that the corporation received in 1990 for the delivery of trees in a subsequent year were advance payments of income includable in the gross income of the corporation for 1990. Petitioner maintains that the payments were refundable deposits and thus did not constitute income to the corporation when received. Gross income is defined in section 61(a) as "all income from whatever source derived," including compensation for services and gross income from business. An advance payment of income is includable in gross income in the year the advance payment is received. Schlude v. Commissioner, 372 U.S. 128 (1963); Oak Indus., Inc. v. Commissioner, 96 T.C. 559, 563-564 (1991). A deposit, *141 on the other hand, is not includable in gross income when received. Indianapolis Power & Light Co. v. Commissioner, 857 F.2d 1162, 1165 (7th Cir. 1988), affg. 88 T.C. 964 (1987), affd. 493 U.S. 203 (1990); Oak Indus., Inc. v. Commissioner, supra at 564. Petitioner bears the burden of proving that the payments that the corporation received were deposits and not advance payments of income. Rule 142(a). The leading authority addressing the taxability of customers' deposits is the Supreme Court opinion in Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203 (1990). In that case, the Supreme Court applied what has become known as the "complete dominion test" to determine whether customer deposits should be included in taxable income when received. Under the complete dominion test, the taxability of deposits: turns upon the nature of the rights and obligations that * * * [the taxpayer] assumed when the deposits were made. In determining what sort of economic benefits qualify as income, this Court has invoked various formulations. *142 It has referred, for example, to "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). * * * [Id. at 209; emphasis added.]
The Court held that deposits acquired by the taxpayer subject to an express obligation to repay were not within the complete dominion of the taxpayer and thus not taxable advance payments. Id. at 209. Both the Supreme Court in Indianapolis Power and this Court have held that control over deposits, unrestricted use of the funds, and nonpayment of interest are not dispositive factors in determining whether a taxpayer exercised complete dominion over deposits received or is obligated to repay the deposits. Id. at 209; Kansas City S. Indus. v. Commissioner, 98 T.C. 242, 262 (1992); Oak Indus., Inc. v. Commissioner, supra at 567-568. Rather, the key to determining whether or not a taxpayer has "complete dominion" over deposits received is "whether the taxpayer has some guarantee that he will be allowed to keep the money." Commissioner v. Indianapolis Power & Light Co., supra at 210. *143 Respondent maintains that the corporation had "complete dominion" over the payments received from buyers because the decision to grant a requested refund was a contingent, unilateral decision that was made by petitioner. In respondent's view, the corporation, not the buyers, controlled whether or not a deposit would be refunded. Under the agreements, the corporation had no express obligation to repay the growers their deposits unless the corporation was unable to perform because of "strikes, riots, war, invasion, fire, explosion, accident, frost, or other unusual adverse weather, acts of God, or any other matters which are beyond Seller's [the corporation's] control." Thus, respondent contends that, because the corporation had no express contractual or legal duty to return advance payments to its customers, the corporation had a "guarantee" that it could keep the payments. Respondent further maintains that the decisions of the corporation as to the cancellation and refunding of the payments were made in the complete discretion of petitioner on a case-by-case basis rather than in conformity with a long-continued refund policy. Petitioner testified that he agreed to refund advance *144 payments to generate goodwill with the buyers. Respondent contends that this suggests that petitioner had discretion in deciding to refund a payment to a buyer. If, on the other hand, petitioner simply had been honoring a pre-existing obligation to refund the payments when he authorized refunds, his conduct would, according to respondent, have generated a negligible amount of goodwill. Despite the absence of an express provision in the agreements providing that the payments were refundable to the growers for any reason, petitioner argues that both the buyers and the corporation regarded the payments as fully refundable deposits. In petitioner's view, the conduct of the corporation and the growers demonstrates that the deposits were refundable at the discretion of the growers. Petitioner points to his uncontradicted testimony that petitioner had never denied a buyer's request for a refund as evidence of the corporation's long-continued policy of refunding deposits at the request of the growers. In addition, petitioner notes that the corporation consistently complied with the buyers' specific instructions for the disposition of a refund. Petitioner further maintains that the *145 conduct of the corporation and the growers, after the agreements were executed and prior to any controversy, is of primary importance in determining the appropriate construction of the agreements. Because petitioner had never denied a buyer's request to cancel a contract and to have the buyer's deposit refunded, he asserts that, under the agreements, the growers had a right to receive their deposits back, at their discretion. Petitioner cites Crestview Cemetery Association v. Dieden, 54 Cal. 2d 744, 356 P.2d 171 (1960), as authority for his assertion. In Crestview, the Supreme Court of California applied the rule of "practical construction" to an ambiguous oral contract to determine the meaning and intent of the parties to the contract. Under the rule of practical construction, great weight is given to the acts and conduct of the parties with knowledge of its terms in construing the contract. Id., 54 Cal. 2d at 753. Petitioner's reliance on Crestview and the rule of practical construction is misplaced. See Eichman v. Fotomat Corp., 880 F.2d 149 (9th Cir. 1989). *146 Here, the agreements were, on their face, unambiguous, and petitioner has not argued that the terms of the agreement were ambiguous. In substance, petitioner is attempting to use his subsequent conduct in never denying a customer's request for a refund to add a new term to the agreements that would make the deposits refundable at a buyer's request. Petitioner's argument is unpersuasive. Under California law, the general rule for contract construction is that a contract should be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ. Code sec. 1636 (West 1985). The relevant intent is objective and is to be determined by the language of the contract and by the surrounding conduct and not by the contracting parties' subjective beliefs. Cal. Civ. Code sec. 1638 (West 1985); United Commercial Ins. v. Paymaster Corp., 962 F.2d 853 (9th Cir. 1992). Petitioner's testimony suggests that he may have intended to authorize the cancellation of an agreement and to refund a deposit whenever a buyer made such a request. Petitioner presented no evidence, however, that he expressed this intention *147 to any of the buyers at the time the agreements were executed. Under the plain language of the agreements, the buyers had a right to expect the corporation to "deliver healthy trees of good quality." In addition, by signing the agreements, the growers received a discount of $ 0.25 per tree relative to other customers. In the absence of evidence that petitioner communicated to the buyers that they had a unilateral right of cancellation, we cannot imply this additional right into the agreements. Petitioner has not met his burden of proof in demonstrating that there was a mutual intention of the parties to the agreements that the buyers had a right to an automatic refund of their deposits. We hold that the deposits received by the corporation in 1990 were advance payments of income constituting taxable income to petitioner when received. The corporation enjoyed "complete dominion" over these payments because it had no obligation to repay any amount to the buyers unless the corporation defaulted on its commitment to deliver the trees. Both the timing and the method of refunds were within the control of the corporation, not of the buyers, and therefore the corporation had a guarantee *148 that, so long as it fulfilled its contractual obligation to deliver the trees, it had a right to keep the payments. In an advance-payment situation, the taxpayer's dominion over the money received is sufficient to justify inclusion of the amounts in the taxpayer's gross income because the taxpayer's right to retain the money is dependent solely upon the taxpayer's adherence to its contractual duties. Commissioner v. Indianapolis Power & Light Co., 493 U.S. at 209-211; Oak Indus., Inc. v. Commissioner, 96 T.C. at 572. It is not determinative that petitioner, on behalf of the corporation, chose to authorize refunds whenever a customer made such a request, because whether the deposits should be included in taxable income turns upon the nature of the rights and obligations of the corporation and the buyers at the time the deposits were received. Commissioner v. Indianapolis Power & Light Co., supra at 209. When the buyers made deposits with the corporation, they had no right to demand refunds, and the corporation had no obligation to repay the deposits to the buyers unless the corporation *149 was unable to deliver the trees. We need not address respondent's alternative contentions that the advance payments were not nontaxable loans or that the corporation received the payments in 1990 under a claim of right, because resolution of this case turns upon application of the complete dominion test as established in Commissioner v. Indianapolis Power & Light Co., supra. Because we have concluded that the corporation received taxable income in 1990 when it received the buyers' advance payments for the purchase of trees, the corporation must include those amounts in its gross income for that year. Decision will be entered for respondent.