T.C. Memo. 2003-340

UNITED STATES TAX COURT

PERRY FUNERAL HOME, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14722-02.                    Filed December 16, 2003.

P is a funeral home organized and operating in
Massachusetts.  During the years in issue, P entered
into preneed funeral contracts and received payments in
advance of death for goods and services to be provided
later at the contract beneficiary's death.  These
payments were refundable at the contract purchaser's
request, pursuant to State law, at any time until the
goods and services were furnished.  P, an accrual basis
taxpayer, included these payments in income not in the
year of receipt but in the year in which the goods and
services were provided.

<u>Held</u>:  Payments received by P under its preneed
funeral contracts are includable in gross income only
upon the provision of the subject goods and services.

<u>Held</u>, <u>further</u>, P is liable for the sec. 6662,
I.R.C., accuracy-related penalty with respect to items
conceded by P, apart from the preneed accounting issue.

Edward DeFranceschi, David Klemm, and Jason Bell, for petitioner.

Louise R. Forbes, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  Respondent determined the following deficiencies and penalty with respect to petitioner's Federal income taxes for the calendar years 1996 and 1997:

| Year | Deficiency | Penalty I.R.C. Sec. 6662 |
|------|-----------|--------------------------|
| 1996 | $1,044,037 | $106,877.80 |
| 1997 | 1,817 | -- |

After concessions by the parties, the principal issues for decision are:

(1) Whether payments received by petitioner under preneed funeral contracts are includable in gross income during the year of receipt or during the year in which the goods and services are provided by petitioner; and

(2) whether petitioner is liable for the section 6662 accuracy-related penalty.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner is a funeral home located at all relevant times in New Bedford, Massachusetts. Petitioner began operations in 1963 as a partnership and was incorporated under the laws of the Commonwealth of Massachusetts on September 19, 1967. Brothers Thomas Perry and William Perry each own a 50-percent interest in petitioner and are funeral directors licensed by the Commonwealth of Massachusetts.

Petitioner's Operations

Prior to and during the years in issue, petitioner entered into preneed funeral contracts. Under these arrangements, the contract purchaser selected, on a prospective basis, the goods and services to be provided by petitioner at the contract beneficiary's death. Petitioner would designate the selected items and applicable charges on a written form.

If the resultant balance was then paid in advance of death, either in a lump sum or in installments, petitioner agreed to honor the contract at death as written, without additional cost to the purchaser or family. If the resultant balance was to be paid through the proceeds of an insurance policy or was left unfunded, the amount due would be recalculated in accordance with the prices in effect at the time of death.

The written form used by petitioner for these purposes was not specific to prearranged funerals and contained no express provisions regarding the use or refundability of amounts received

thereunder.  A handwritten notation that the contract was irrevocable was added to certain of the forms, allegedly for reasons related to Medicaid eligibility.  Regardless of such language, however, it was petitioner's practice to indicate to purchasers that they had the right to cancel at any time and would receive their money back.[2]

The experience of petitioner has been that only a very small percentage of preneed contracts are in fact canceled.  The record indicates that during the period from approximately 1997 through the time of trial in 2003, six contracts were canceled.[3]  The amounts paid thereon were refunded, and on certain occasions the refunds also included an interest component based on "kind of a guess" about prevailing rates.

During the years in issue, petitioner maintained a business checking account and the following investments:  A Putnam Investments mutual fund account, a Merrill Lynch ready asset account, Fleet Financial shares, Massachusetts Savings

---

[2]  The contractual notations were ineffective given their sham nature and the explicit directives of Massachusetts law discussed below.  See Comdisco, Inc. v. United States, 756 F.2d 569, 576 (7th Cir. 1985) ("in general, a contract entered in violation of statutory or regulatory law is unenforceable").

[3] The parties stipulated:  "Of the pre-need funeral arrangements in existence on January 1, 1996, six have been cancelled.  Attached hereto and marked as Exhibits 19-J through 24-J are copies of petitioner's business records related to these pre-need arrangements."  However, the referenced exhibits bear contract dates spanning the years 1991 to 1999 and cancellation dates spanning years 1997 to 2003.

Investments certificates of deposit, a BayBank money market account, a BayBrokerage account (for 1996 only), and a BayBank escrow account. Moneys received pursuant to preneed contracts were placed by petitioner in one of the investment vehicles. Upon petitioner's provision of goods and services at the death of a preneed contract beneficiary, an amount equal to the purchase price of the contract was transferred from the investment accounts to petitioner's checking account.

The BayBank escrow account is a compilation of accounts, opened before 1996, each in the name of an individual contract beneficiary. Petitioner's accountant advised establishment of the escrow account in the early 1990s. This account was used for the deposit of preneed receipts for a period prior to the years in issue, until the resultant administrative burden caused petitioner to discontinue the practice. The balance of the BayBank escrow account as of January 1, 1996, was $106,579.16, and those funds are not at issue in this proceeding. The investments other than the Baybank escrow account are held solely in petitioner's name and list petitioner's tax identification number.

Petitioner's Accounting and Tax Reporting

Petitioner is an accrual basis taxpayer. For accounting purposes, petitioner records payments received pursuant to preneed contracts as liabilities under the designation prearranged funerals. Petitioner does not recognize as income payments recorded on its books and records as prearranged funerals until the tax year in which the goods and services are provided. Petitioner does recognize interest and dividend income earned on the investments, exclusive of the BayBank escrow account, into which the preneed funds are deposited.

Petitioner filed Forms 1120, U.S. Corporation Income Tax Return, for 1996, 1997, and 1998 consistent with the foregoing approach. Attached to each return is a Schedule L, Balance Sheets per Books. These Schedules L reflect as "Other investments" the following balances in petitioner's investment vehicles, including the BayBank escrow account:

| Year | As of Jan. 1 | As of Dec. 31 |
|------|--------------|---------------|
| 1996 | $2,270,655 | $2,431,946 |
| 1997 | 2,431,946 | 2,515,217 |
| 1998 | 2,515,217 | 2,503,934 |

Also on the Schedules L, petitioner included in "Other current liabilities" the following amounts for prearranged funerals:

| Year | As of Jan. 1 | As of Dec. 31 |
|------|--------------|---------------|
| 1996 | $1,587,416 | $1,612,272 |
| 1997 | 1,612,272 | 1,614,929 |
| 1998 | 1,614,929 | 1,543,284 |

Respondent on June 26, 2002, issued to petitioner the statutory notice of deficiency underlying the present litigation. Therein, respondent determined, inter alia, that moneys received under preneed contracts are to be characterized as income to petitioner in the year of receipt.

OPINION

I. Preliminary Matters

A. Burden of Proof

In general, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a). Section 7491, effective for court proceedings that arise in connection with examinations commencing after July 22, 1998, may operate, however, in specified circumstances to place the burden on the Commissioner. Internal Revenue Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. With respect to factual issues and subject to enumerated limitations, section 7491(a) may shift the burden of proof to the Commissioner in instances where the taxpayer has introduced credible evidence. Concerning penalties and additions to tax, section 7491(c) places the burden of production on the Commissioner.

The record in this case is not explicit as to when the underlying examination began.[4]  As regards the substantive accounting issues, however, the Court finds it unnecessary to decide whether the burden should be shifted under section 7491(a).  Few facts concerning how petitioner conducted the preneed transactions are in dispute.  Given this circumstance, the record is not evenly weighted and is more than sufficient to render a decision on the merits based upon a preponderance of the evidence.  With respect to the penalty, because respondent on brief assumes that section 7491(c) is applicable, the Court will do likewise.

B.  Evidentiary Motion

After the trial in this case, petitioner filed a motion for the Court to take judicial notice of the consent judgment rendered in Commonwealth v. Deschene-Costa, C.A. No. C03-0647 (Mass. Super. Ct. June 4, 2003).  The motion is made pursuant to rule 201 of the Federal Rules of Evidence, which provides in relevant part as follows:

---

[4] Presumably, because the Form 4549-A, Income Tax Examination Changes, contained in the record covers the 1996, 1997, and 1998 years, the audit would have begun after the September 15, 1999, date on which petitioner's 1998 Federal income tax return appears to have been signed by the return preparer.  The possibility exists, however, that the 1998 or even the 1997 audit may have been added to an audit for 1996 already in progress.  Nonetheless, as explained in the text, we need not resolve or rely on such speculation here.

Rule 201.  Judicial Notice of Adjudicative Facts

(a) Scope of rule.--This rule governs only judicial notice of adjudicative facts.

(b) Kinds of facts.--A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

This Court has previously noted that "under rule 201, records of a particular court in one proceeding commonly are the subject of judicial notice by the same and other courts in other proceedings", and "Also generally subject to judicial notice under rule 201 is the fact that a decision or judgment was entered in a case, that an opinion was filed, as well as the language of a particular opinion."  Estate of Reis v. Commissioner, 87 T.C. 1016, 1027 (1986).

In the judgment that is the subject of petitioner's motion, the defendant funeral home operator, when confronted by the Commonwealth of Massachusetts, consented to a permanent injunction and to payment of restitution for misuse of funeral trust funds.  Commonwealth v. Deschene-Costa, supra.  Respondent agrees that the Court may take judicial notice of the judgment under the above-quoted standards of rule 201 but questions the relevance of the material.  Accordingly, the Court will take judicial notice of the existence and content of the judgment pursuant to rule 201 but will give it only such consideration as

is warranted by its pertinence to the Court's analysis of petitioner's case.

II.  General Rules

A.  Federal Taxation Principles

The Internal Revenue Code imposes a Federal tax on the taxable income of every corporation.  Sec. 11(a).  Section 61(a) specifies that gross income for purposes of calculating such taxable income means "all income from whatever source derived".  Encompassed within this broad pronouncement are all "undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion."  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).  Stated otherwise, gross income includes earnings unaccompanied by an obligation to repay and without restriction as to their disposition.  James v. United States, 366 U.S. 213, 219 (1961).

Section 451(a) provides the following general rule regarding the year in which items of gross income should be included in taxable income:

> The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period.

Consistent with the principle of section 451, section 446(a) and (b) directs that taxpayers are to compute taxable income using the method of accounting regularly employed for keeping their

books, with the exception that "if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." In general, the accrual method is designated a permissible method of accounting for purposes of section 446. Sec. 446(c)(2).

Under the accrual method, income is to be included for the taxable year when all events have occurred that fix the right to receive the income and the amount of the income can be determined with reasonable accuracy. Secs. 1.446-1(c)(1)(ii), 1.451-1(a), Income Tax Regs. Typically, all events that fix the right to receive income have occurred upon the earliest of the following to take place: The income is (1) actually or constructively received; (2) due; or (3) earned by performance. Schlude v. Commissioner, 372 U.S. 128, 133 (1963); Johnson v. Commissioner, 108 T.C. 448, 459 (1997), affd. in part, revd. in part and remanded on another ground 184 F.3d 786 (8th Cir. 1999).

As caselaw applying the above standards has evolved, it has become well established that amounts constituting advance payments for goods or services are includable in gross income in the year received. Schlude v. Commissioner, supra; AAA v. United States, 367 U.S. 687 (1961); Auto. Club of Mich. v. Commissioner, 353 U.S. 180 (1957); RCA Corp. v. United States, 664 F.2d 881 (2d

Cir. 1981); see also Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203, 207 & n.3 (1990).

In contrast, amounts properly characterized as loans, deposits, or trust funds are not includable upon receipt. Commissioner v. Indianapolis Power & Light Co., supra at 207-208; Johnson v. Commissioner, supra at 467-475; Oak Indus., Inc. v. Commissioner, 96 T.C. 559, 563-564 (1991); Angelus Funeral Home v. Commissioner, 47 T.C. 391, 397 (1967), affd. 407 F.2d 210 (9th Cir. 1969). The rationale underlying this distinction is that money received in the capacity solely of a borrower, depository, agent, or fiduciary, because it is accompanied by an obligation to repay or restriction as to disposition, is not income at all. See Commissioner v. Indianapolis Power & Light Co., supra at 208 n.3; Johnson v. Commissioner, supra at 474-475. Hence, no question of the timing of income accrual is presented. See Commissioner v. Indianapolis Power & Light Co., supra at 208 n.3; Johnson v. Commissioner, supra at 474-475.

B. State Funeral Services Regulation

Preneed contracts and arrangements in the Commonwealth of Massachusetts are governed by the regulations of the Board of Registration in Embalming and Funeral Directing. Mass. Regs. Code tit. 239, secs. 4.01-4.10 (2003); see also Mass. Gen. Laws Ann. ch. 112, sec. 85 (West 2003) (authorizing the board to adopt, promulgate, and enforce regulations). For purposes of

these regulations, a "pre-need funeral contract" is defined as "any pre-need funeral services contract or pre-need funeral arrangements contract, entered into in advance of death". Mass. Regs. Code tit. 239, sec. 4.01 (2003). A "pre-need funeral services contract", in turn, is:

> any written agreement whereby a licensed funeral establishment agrees, prior to the death of a named person, to provide specifically-identified funeral goods and/or services to that named person upon his/her death, and which is signed by both the buyer and a duly authorized representative of the licensed funeral establishment. [Id.]

Similarly, "pre-need funeral arrangements contract" means:

> any written arrangement between a licensed funeral establishment and another person which establishes a source of funds to be used solely for the purpose of paying for funeral goods and/or services for a named person, but which does not identify the specific funeral goods and/or services to be furnished to that person. [Id.]

The regulations set forth the required contents of "pre-need funeral contracts". Mass. Regs. Code tit. 239, sec. 4.03 (2003). As pertains to funding, contracts are to contain the following:

> A written acknowledgement, signed by the buyer, which indicates that:
>
> 1. The buyer has established a funeral trust fund pursuant to 239 CMR 4.00 and has received all disclosures required by 239 CMR 4.06(3); or
>
> 2. The buyer has elected to purchase a pre-need insurance policy or annuity and has received all disclosures required by 239 CMR 4.07(2); or
>
> 3. The buyer has tendered payment in full for all funeral goods and services specified in the contract and has received satisfactory written evidence that

those goods or services will be furnished at time of death; or

4.   The buyer has declined to select a funding method and has paid no money to the funeral establishment; [Mass. Regs. Code tit. 239, sec. 4.03(1)(d) (2003).]

A "funeral trust" within the meaning of the foregoing provision is "a written agreement of trust whereby funds are transferred to a named trustee with the intention that the trustee will manage and administer those funds for the benefit of a named beneficiary and use those funds to pay for funeral goods and/or services to be furnished to that named beneficiary."  Mass. Regs. Code tit. 239, sec. 4.01 (2003).

Cancellation rights likewise are specified in the regulations, as follows:

Any buyer of a pre-need funeral contract may cancel that contract and receive a full refund of all monies paid, without penalty, at any time within ten days after signing said contract.  After the expiration of this ten-day "cooling off period" a pre-need funeral contract may be canceled in accordance with 239 CMR 4.06(8).  [Mass. Regs. Code tit. 239, sec. 4.05(1) (2003).]

The referenced Mass. Regs. Code tit. 239, sec. 4.06(8) (2003) reads, in pertinent part:

The buyer who signed a pre-need funeral contract, or his/her legal representative, may cancel a pre-need funeral contract with a licensed funeral establishment at any time by sending written notice of such cancellation, via certified mail, return receipt requested, to said funeral establishment.  If a funeral trust has been established to fund said pre-need funeral contract, and the licensed funeral establishment is not the trustee, the buyer shall

> forward a copy of said notice of cancellation to the named trustee of said funeral trust.

III.  Contentions of the Parties

We turn now to the parties' contentions regarding application of the foregoing rules to petitioner's situation. Petitioner contends that the payments received pursuant to preneed contracts are not includable in gross income until the underlying funeral goods and services are provided.  In support of this assertion, petitioner references three alternative theories for exclusion.  Petitioner's primary argument is that the payments constitute nontaxable deposits under the reasoning of Commissioner v. Indianapolis Power & Light Co., supra. Additionally, petitioner maintains that the amounts at issue should be characterized as trust funds akin to those excluded from income in cases such as Angelus Funeral Home v. Commissioner, supra.  Petitioner's third basis for its treatment of the payments is that even if the amounts are found to be advance payments of income, rather than deposits or trust funds, their deferral is appropriate under the exception established in Artnell Co. v. Commissioner, 400 F.2d 981 (7th Cir. 1968), revg. and remanding 48 T.C. 411 (1967), to the general rule requiring immediate inclusion of advances.

With respect to the section 6662 penalty, petitioner argues that the lines of cases cited above provide substantial authority and reasonable cause for taking the position that the funds

received for preneed contracts were not income or property of petitioner.

In contrast, respondent contends that petitioner obtained dominion and control over the preneed funds at the time of receipt such that the amounts are properly included in income as advance payments under the all events test. Respondent further argues that each of the exceptions relied upon by petitioner is inapplicable on these facts.

Specifically, it is respondent's position that advance payments for services to be rendered by the taxpayer are not the equivalent of a refundable security deposit or loan and, hence, are not controlled by the standards set forth in Commissioner v. Indianapolis Power & Light Co., supra. Second, respondent emphasizes that petitioner's control over the funds and the absence of any contractual or legal restrictions preclude treating the moneys as in trust.[5] Finally, respondent alleges that petitioner cannot qualify for the limited Artnell Co. v. Commissioner, supra, exception to the all events test where there exists no certainty as to when or whether petitioner will perform under the contracts.

In connection with the section 6662 penalty, respondent disputes petitioner's assertions of substantial authority and

---

[5] Accordingly, respondent considers Rev. Rul. 87-127, 1987-2 C.B. 156, dealing with the treatment of funeral trusts as grantor trusts of the purchaser, inapplicable here.

reasonable cause.  Respondent points particularly to the reporting by petitioner of interest on the preneed payments, the choice to invest the funds in petitioner's name rather than in regulated trust accounts, and the advice petitioner received from its accountant pertaining to the BayBank escrow account.

IV.  Preneed Accounting

We first consider whether the preneed payments at issue should be treated as deposits governed by Commissioner v. Indianapolis Power & Light Co., 493 U.S. 203 (1990).  The Supreme Court in Commissioner v. Indianapolis Power & Light Co., supra at 210, established what is referred to as the "complete dominion" test for identifying those payments over which the taxpayer has such control as to render them income:

> In determining whether a taxpayer enjoys "complete dominion" over a given sum, the crucial point is not whether his use of the funds is unconstrained during some interim period.  The key is whether the taxpayer has some guarantee that he will be allowed to keep the money. * * *

Further, the answer to this inquiry "depends upon the parties' rights and obligations at the time the payments are made."  Id. at 211.

With respect to distinguishing between taxable advance payments and nontaxable deposits, the Supreme Court further explained:

> An advance payment, like the deposits at issue here, concededly protects the seller against the risk that it would be unable to collect money owed it after it has

furnished goods or services. But an advance payment does much more: it protects against the risk that the purchaser will back out of the deal before the seller performs. From the moment an advance payment is made, the seller is assured that, so long as it fulfills its contractual obligation, the money is its to keep. Here, in contrast, a customer submitting a deposit made no commitment to purchase a specified quantity of electricity, or indeed to purchase any electricity at all. IPL's right to keep the money depends upon the customer's purchase of electricity, and upon his later decision to have the deposit applied to future bills, not merely upon the utility's adherence to its contractual duties. * * *

> * * * * * * *

It is this element of choice that distinguishes an advance payment * * * The individual who makes an advance payment retains no right to insist upon the return of the funds; so long as the recipient fulfills the terms of the bargain, the money is its to keep. The customer who submits a deposit to the utility * * * retains the right to insist upon repayment in cash; he may <u>choose</u> to apply the money to the purchase of electricity, but he assumes no obligation to do so, and the utility therefore acquires no unfettered "dominion" over the money at the time of receipt. [<u>Id.</u> at 210-212; fn. ref. omitted.]

This Court, in applying the reasoning of <u>Commissioner v. Indianapolis Power & Light Co.</u>, <u>supra</u>, has similarly emphasized the importance of which party controls the conditions under which repayment or refund of the disputed amounts will be made. See, e.g., <u>Herbel v. Commissioner</u>, 106 T.C. 392, 413-414 (1996), affd. 129 F.3d 788 (5th Cir. 1997); <u>Highland Farms, Inc. v. Commissioner</u>, 106 T.C. 237, 251-252 (1996); <u>Kansas City S. Indus., Inc. v. Commissioner</u>, 98 T.C. 242, 262 (1992); <u>Michaelis Nursery, Inc. v. Commissioner</u>, T.C. Memo. 1995-143. We have

summarized that "if the payor controls the conditions under which the money will be repaid or refunded, generally, the payment is not income to the recipient." Herbel v. Commissioner, supra at 413. "On the other hand, if the recipient of the payment controls the conditions under which the payment will be repaid or refunded, we have held that the recipient has some guaranty that it will be allowed to keep the money, and hence, the recipient enjoys complete dominion over the payment." Id. at 414.

Thus, while refundability per se is insufficient for identifying nontaxable deposits, Johnson v. Commissioner, 108 T.C. 448, 470-471 (1997), refundability within the buyer's control and outside that of the seller is a significant indicator under the current jurisprudence. Additionally, to the extent that any further factual refinement is warranted to distinguish "the Indianapolis Power & Light line of cases" from earlier opinions discounting the importance of the refundability criterion, the law classifying amounts as nontaxable deposits is clear at least insofar as "the taxpayer's right to retain them was contingent upon the customer's future decisions to purchase services and have the deposits applied to the bill." Johnson v. Commissioner, supra at 471.

As to other potential indicia, both the Supreme Court in Commissioner v. Indianapolis Power & Light Co., supra, and this Court have held that factors such as control over deposits (i.e.,

absence of a trust fund), unrestricted use, nonpayment of interest, and later application of the moneys to services are probative but not dispositive in evaluating the existence of complete dominion.  Id. at 209-211; Highland Farms, Inc. v. Commissioner, supra at 251; Kansas City S. Indus., Inc. v. Commissioner, supra at 261-262; Oak Indus., Inc. v. Commissioner, 96 T.C. 559, 569-574 (1991); Michaelis Nursery, Inc. v. Commissioner, supra.

With respect to the facts before us, here petitioner's customers, and not petitioner, controlled whether and when any refund of the preneed funds would be made.  The regulatory scheme governing preneed funeral contracts expressly affords buyers the right to cancel such contracts at any time.  Mass. Regs. Code tit. 239, secs. 4.05, 4.06(8) (2003).  Further, while Mass. Regs. Code tit. 239, sec. 4.06(8) (2003), contains a more detailed description of the applicable cancellation procedures in the event that a funeral trust has been established, the express text covers preneed funeral contracts and does not limit this cancellation right to those instances involving a funeral trust. Accordingly, whether or not petitioner placed the preneed funds in trust is not crucial to our analysis of the refundability criterion.

In addition, in view of respondent's comments on brief suggesting that petitioner's historical percentage of

cancellations was so low that the right should be disregarded, we emphasize that it is the bona fide existence of such a right, not the exercise or frequency of exercise, which controls. Because the cancellation right is State granted,[6] we do not face a situation where the outcome might implicate questions concerning the nature and legitimacy of the bargain between particular parties. Also, we would be hard pressed to say that the right here was illusory when cancellations did occur, and corresponding refunds were given, in the course of petitioner's business.

The consequence of this fixed right is that, to the extent Commissioner v. Indianapolis Power & Light Co., 493 U.S. at 210, identifies an advance payment as one which protects against the risk that the buyer will back out before the seller has a chance to perform, the preneed contracts and payments fail to serve that function. Moreover, the practical reality of the funeral services business renders this situation analogous to the factual

---

[6] Although the early case of Angelus Funeral Home v. Commissioner, 47 T.C. 391 (1967), affd. 407 F.2d 210 (9th Cir. 1969), expressly dealt only with whether amounts should be excluded from income as trust funds and did not consider a deposit rationale, the facts and result support our analysis here. In that case, payments made under the mortuary's revised preneed contracts were deemed taxable upon receipt (for lack of trust), id. at 398, and would not appear to have been otherwise excludable as deposits. The Court noted that such refunds as the mortuary gave were made "voluntarily", and it "was not obligated to refund any moneys collected pursuant to the terms of the contracts". Id. at 394. Nor, in any event, does it appear that the mortuary raised refundability as a defense to accrual of the income from the revised contracts. Id. at 397-299; see also Angelus Funeral Home v. Commissioner, 407 F.2d at 213-214.

scenario noted in Johnson v. Commissioner, supra at 471, as a hallmark of those refundable receipts clearly within the reasoning of Commissioner v. Indianapolis Power & Light Co., supra.  On account of the open-ended, "at any time", nature of the cancellation right, petitioner's opportunity to perform the designated services and in fact earn the preneed funds (thereby eliminating the cancellation right) was contingent upon the later choice of the decedent's survivors or representative actually to call upon petitioner to act under the contract.

The mere execution of a preneed contract did not place petitioner in a position to fulfill the terms of the bargain.  As a practical matter, because the ultimate decision to purchase frequently rested in the hands of third parties, there existed in these situations what more closely resembles a condition precedent to petitioner's right to perform than a condition subsequent that would eliminate a current right to so act.  See Charles Schwab Corp. & Subs. v. Commissioner, 107 T.C. 282, 293 (1996) (distinguishing conditions precedent and subsequent in the context of income accrual), affd. 161 F.3d 1231 (9th Cir. 1998).

The Court is satisfied that the totality of the unique circumstances of petitioner's business brings it within the rationale of Commissioner v. Indianapolis Power & Light Co., supra, and its progeny.  We hold that the amounts received by petitioner under these preneed funeral contracts are includable

in income only upon the provision of the subject goods and services.  Furthermore, given this conclusion based upon Commissioner v. Indianapolis Power & Light Co., supra, we need not reach petitioner's alternative contentions regarding excludable trust funds or deferred recognition of advance payments.

V.  Section 6662 Penalty

Subsection (a) of section 6662 imposes an accuracy-related penalty in the amount of 20 percent of any underpayment that is attributable to causes specified in subsection (b).  Subsection (b) of section 6662 then provides that among the causes justifying imposition of the penalty are:  (1) Negligence or disregard of rules or regulations and (2) any substantial understatement of income tax.

"Negligence" is defined in section 6662(c) as "any failure to make a reasonable attempt to comply with the provisions of this title", and "disregard" as "any careless, reckless, or intentional disregard."  Caselaw similarly states that "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S.

868 (1991). Pursuant to regulations, "'Negligence' also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs.

A "substantial understatement" is declared by section 6662(d)(1) to exist where the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year or $5,000 ($10,000 in the case of a corporation). For purposes of this computation, the amount of the understatement is reduced to the extent attributable to an item: (1) For which there existed substantial authority for the taxpayer's treatment thereof, or (2) with respect to which relevant facts were adequately disclosed on the taxpayer's return or an attached statement and there existed a reasonable basis for the taxpayer's treatment of the item. See sec. 6662(d)(2)(B).

An exception to the section 6662(a) penalty is set forth in section 6664(c)(1) and reads: "No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion."

Regulations interpreting section 6664(c) state:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Generally, the most important factor is the extent of the taxpayer's effort to assess

the taxpayer's proper tax liability. * * * [Sec. 1.6664-4(b)(1), Income Tax. Regs.]

Reliance upon the advice of an expert tax preparer may, but does not necessarily, demonstrate reasonable cause and good faith in the context of the section 6662(a) penalty.  Id.; see also United States v. Boyle, 469 U.S. 241, 251 (1985); Freytag v. Commissioner, supra at 888.  Such reliance is not an absolute defense, but it is a factor to be considered.  Freytag v. Commissioner, supra at 888.

In order for this factor to be given dispositive weight, the taxpayer claiming reliance on a professional must show, at minimum, that (1) the preparer was supplied with correct information and (2) the incorrect return was a result of the preparer's error.  See, e.g., Westbrook v. Commissioner, 68 F.3d 868, 881 (5th Cir. 1995), affg. T.C. Memo. 1993-634; Cramer v. Commissioner, 101 T.C. 225, 251 (1993), affd. 64 F.3d 1406 (9th Cir. 1995); Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Pessin v. Commissioner, 59 T.C. 473, 489 (1972).

As previously indicated, section 7491(c) places the burden of production on the Commissioner.  The Commissioner satisfies this burden by "com[ing] forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty" but "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions."  Higbee v.

<u>Commissioner</u>, 116 T.C. 438, 446 (2001).  Rather, "it is the taxpayer's responsibility to raise those issues."  <u>Id.</u>

The notice of deficiency issued to petitioner determined applicability of the section 6662(a) penalty for 1996 on account of both negligence and/or substantial understatement.[7]  To the extent that we have ruled in petitioner's favor on the accounting issue presented for decision, there can be no underpayment or corresponding penalty attributable thereto.

However, petitioner also conceded several other adjustments for 1996.[8]  The record is entirely devoid of any information regarding the circumstances surrounding petitioner's position on these items, which include amounts claimed for beginning inventory, cost of goods sold, legal and professional fees, and depreciation.  To the extent that these concessions result in an underpayment, we conclude that respondent has satisfied his burden under section 7491(c) of production of sufficient evidence.  At minimum, nothing suggests that these errors were other than negligent.  We also note that the threshold

---

[7] The notice also referenced substantial valuation misstatement as an additional alternative ground, see sec. 6662(b)(3), but since valuation was not a focus of this case, we disregard the apparent boilerplate reference.

[8] We note that the phrasing of and figures recited in the parties' stipulations concerning settled issues raise some ambiguity regarding the precise nature of the settlement reached. However, it is clear that petitioner made multiple concessions and that the parties do not intend for the Court to address the substantive matters covered by these stipulations.

determination of any remaining substantial understatement is primarily a computational matter, which we leave to the parties.

Accordingly, the burden rests on petitioner to show mitigating circumstances such as substantial authority, a reasonable basis, or reasonable cause. Petitioner on brief claims to have had substantial authority, a reasonable basis, reasonable cause, and good faith with respect to its reporting of the preneed contract payments. In contrast, petitioner directs no comments to the various conceded adjustments, nor did petitioner introduce any evidence pertaining to these items. Furthermore, although petitioner generally points out that its returns were prepared by a professional tax adviser, again there has been no showing whatsoever regarding what information petitioner supplied on the conceded items. We therefore lack grounds on which to conclude that the incorrect return resulted from the preparer's errors. Respondent's determination of the section 6662 penalty is sustained to the extent warranted by computations made in accordance with our holding for petitioner on the preneed accounting issue.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.